### Hood's Appeal.

*Public officers—Appointment—Salary board—Counties of the sixth class—Collection of inheritance tax—Acts of July 8, 1919, and June 29, 1923.*

1. On an appeal by a register of wills and recorder of deeds of a county of the sixth class from the refusal of the salary board to appoint an additional deputy, where the evidence is conflicting as to the necessity for such additional official, the court may take into consideration the course pursued as to such appointments in other counties of the sixth class.

2. If, on a consideration of such evidence and the conflicting oral proof offered, the court is convinced that an additional deputy is not necessary, the appeal will be dismissed.

3. Where an employee of the register of wills acts for the State under the Act of July 8, 1919, P. L. 782, in the collection of the inheritance taxes, the fees received by such official from the State should, at least in some measure, be applied to the payment of services distinctly rendered to the State and so recognized both by the State and the statute.

Appeal from salary board. C. P. Crawford Co., Feb. T., 1925, No. 55.

*John A. Northam,* County Solicitor, and *C. Victor Johnson,* for salary board.

*Thomas & Thomas,* for appellants.

PRATHER, P. J., May 8, 1925.—Crawford County is a county of the sixth class, and, therefore, subject to the provisions of the Act of June 29, 1923, P. L. 944, with reference to the salaries of officers enumerated therein and the number of appointees and their salaries.

The salary board took action to determine the number of clerks and deputies required for the proper discharge of the business of the office of Register of Wills and Recorder of Deeds for the County of Crawford, and fixed the number of such appointees and their salaries as follows: One deputy at a salary

of $150 per month; one clerk at a salary of $100 per month; two copyists at a salary of $70 per month each.

From this action Jeannette W. Hood, occupying both of said offices, has appealed, urging that the board erred in not allowing her an additional deputy at $150 per month. The 5th section of said act provides: "The salary board in all counties of the sixth class, which shall be composed of the county commissioners and the county treasurer, shall fix and determine annually the number and the salaries to be paid to the clerks and deputies required for the proper discharge of the business in the office of the county officers whose salaries are fixed by this act. Any such county officer, deputy or clerk dissatisfied with amount of salary allowed by the salary board may appeal from the action of such board to the Court of Common Pleas of the county, which court shall, after hearing, make an order fixing the salaries of such appointees."

It is to be observed that the act provides, *inter alia*, that "any officer . . . dissatisfied with *amount* of salary allowed by the salary board may appeal . . . to the Court of Common Pleas," and that no appeal is specifically allowed such officer from the action of said board with reference to the *number* of clerks or deputies allowed.

It is urged that an appeal to the Court of Common Pleas by an officer from the action of the salary board fixing the "number" of clerks and deputies allowed will not lie, for the reason that the statute is silent upon this particular subject-matter.

The legal question involved is not free from difficulty. So far as we have been able to discover, it is entirely new and has not yet been passed upon by any of our courts. Our conclusion in this case does not require a decision based upon the legal proposition submitted.

It is but fair to Mrs. Hood to call attention to the fact that her request for an additional deputy is no innovation as to the number of clerks and deputies employed in said office. The records show that for the term of four years preceding her term the office was allowed the number of clerks and deputies she is asking. The Salary Board Act took effect at the beginning of Mrs. Hood's term of office. Prior thereto, the Register and Recorder for Crawford County received a flat salary of $3000 per year, was allowed necessary help in the office, and after deducting his salary and the expense of running said office, the balance was equally divided between himself and the county.

For the last year of Mr. Boswell's term, ending the first Monday of January, 1924, the county received as its share of the proceeds of said office $1741.27. Mr. Boswell is called as a witness in support of the salary board's action, and testifies that one deputy in the office of Register and Recorder for Crawford County is sufficient. If this conclusion be correct, then Mr. Boswell, as Register and Recorder, was wasting the salary he annually allowed a second deputy during his term, to wit, in 1923, $1750, one-half of which, or $875, belonged to Crawford County.

Difficulty in determining by any one outside an office the clerical force required to properly discharge the duties of a particular office may account for the seeming indifference to its cost then and the seeming alertness as to its cost now.

The legislation changing the volume and character of services for the office of register of wills all took effect as early as Jan. 1, 1918. It follows that the quality and quantity of service required in the office of Register and Recorder of Crawford County has not materially changed since Jan. 1, 1918, and that if two deputies were necessary during the four years preceding Mrs. Hood's term, they are necessary now.

If Mr. Boswell had succeeded himself, the plain inference is that he would now be insisting, as he did when in the same office, that two deputies (the number Mrs. Hood asks for) were actually necessary for the proper discharge of the duties of said office. It is plain that this testimony, by reason of its bias and inconsistency, cannot have much convincing weight.

Our inquiry, however, is: What are the needs and reasonable demands of this office as to a clerical force? There being no complaint as to the number of clerks and copyists, our particular inquiry is: Did the salary board make a reasonable allowance of clerical help, when properly distributed, to reasonably discharge the duties incident to said office?

It is of small significance in a day's work whether a clerk is styled a "clerk" or a "deputy." If the office has too many clerks, one of them can, at the pleasure of the officer, be appointed a deputy. Our real consideration, therefore, is whether the entire working force, considered as a whole, allowed to the Register of Wills and Recorder of Deeds, is adequate, regardless of whether they be styled deputies, clerk or copyists.

According to the opinion of appellant, and of Mr. Flower, a deputy of rare and valuable experience in this particular office, the services of another individual in addition to the number allowed by the salary board, in the character of a deputy, is required in said office.

According to the opinion of Henry Veith, a deputy of two years' experience in this office, and of A. M. Douthett, Register of Wills and Recorder of Deeds for the County of Butler, one deputy, or the number allowed by the salary board, is sufficient, with the other office force, to properly discharge the duties of said office.

Giving full credit to the good faith and candor of these witnesses, which side of the controversy prevails?

Ordinarily, an issue of fact is to be determined by the evidence submitted. But when such an issue relates to the solution of a question so complex in its requirements as the one involved in this appeal, and the evidence leaves the mind of the court in doubt as to how that issue should be determined, the court is justified in summoning to its aid available extrinsic facts, the existence and correctness of which are beyond dispute, and all of which may be verified by consulting the proper records.

We have secured such data from the register of wills and recorder of deeds in five counties of the sixth class, which we summarize and compare with Crawford County as to population, the number of deputies and clerks and their monthly salaries, together with the total salaries and the monthly *per capita* cost in the respective counties based upon their population. From this comparison we have deduced the following figures as to the number of appointees, their monthly salaries and monthly *per capita* cost: Crawford County, population 60,667: One deputy at $150; three clerks at $240; total monthly salary, $390; *per capita* cost, six and two-fifths mills. Bradford County, population 53,166: One deputy at $100; two clerks at $130; total monthly salary, $230; *per capita* cost, four and one-third mills. Armstrong County, population 75,568: One deputy at $125; two clerks at $160; total monthly salary, $285; *per capita* cost, three and seven-tenths mills. Indiana County, population 80,910: One deputy at $150; two clerks at $110; with an extra clerk during the winter months at $55 per month; total monthly salary, $280; total monthly *per capita* cost, three and one-half mills. Jefferson County, population 62,104: One deputy at $125; two clerks at $190; total monthly salary, $315; *per capita* cost, five mills. Lawrence County, popula-

Hood's Appeal.

tion 85,545: Two deputies, one at $100 and one at $125; five clerks at $370; total monthly salary, $595; *per capita* cost, seven mills.

Reducing these facts to a table of comparison, we have the following:

| County | Population | Deputies | Salary | Clerks | Salary | Total Monthly Salary | Total Monthly Per Capita Cost According To Population |
|--------|-----------|----------|--------|--------|--------|---------------------|-----------------------------------------------------|
| Crawford ..... | 60,667 | 1 | $150 | 3 | $240 | $390 | 6 2/5  mills |
| Bradford ..... | 53,166 | 1 | 100 | 2 | 130 | 230 | 4 1/3  mills |
| Armstrong ... | 75,568 | 1 | 125 | 2 | 160 | 285 | 3 7/10 mills |
| Jefferson ...... | 62,104 | 1 | 125 | 2 | 190 | 315 | 5      mills |
| Lawrence ..... | 85,545 | 2 | {100 125} | 5 | 370 | 595 | 7      mills |
| Indiana ....... | 80,910 | 1 | 150 | 2 | 110 | 280 | 3 1/2  mills |

(extra clerk winter months, $55)

As to four of the above named counties, namely, Bradford, Armstrong, Indiana and Jefferson, the register and recorder for each of these counties is Clerk of the Orphans' Court, holding three offices instead of two as in Crawford County. This fact of itself would require an appreciable part of a clerk's time in each of these counties.

It is to be observed that in the counties named of our own class, with the exception of Lawrence County, the *per capita* cost of clerical help, even where three offices instead of two are administered, and where the duties are correspondingly increased, is much lower than in our own county.

With reference to Butler County, having a population of 77,270, the clerical force of the office of Register and Recorder, exclusive of copyists, consists of the officer himself, one deputy at $150 per month and two clerks called in on part-time from the copying-room, which time, according to the testimony of Mr. Douthett, would not be more than half-time for either of the girls or full time for one.

As to Butler County, with a population of more than 25 per cent. in excess of our own, the office proper, exclusive of the copying department, is conducted with one deputy and the services of one girl at $75, or a total of $225 per month.

Crawford County is allowed by the salary board one deputy at $150 and one clerk at $100, or a total of $250 per month, for the same character of work, but admittedly less in volume. It would follow naturally, without evidence, that the amount of work in the Register and Recorder's office in Butler County is larger than in Crawford County, but the inference is sustained by the evidence.

We did not add Butler County to the table of counties for the reason that we have no information as to what the copyists are paid, but it is apparent that its *per capita* cost for its deputies and clerks combined is less than ours.

If appellant's request for an additional deputy at $150 a month were granted, it would increase the monthly salary of her appointees to $540 and increase the *per capita* cost of such monthly salaries to nine mills. If allowed, it would increase the monthly clerical pay-roll of this office in Crawford County to $310 above Bradford; $255 above Armstrong; $280 above Indiana, and $255 above Jefferson.

We think a fair consideration of the evidence offered, together with the data gathered from the records of counties in our own class, where services similar in quality and quantity are demanded and discharged, requires a dismissal of this appeal.

In addition to the matters already discussed and considered, it is proper to call attention to the Act of July 8, 1919, P. L. 782, which provides: "All clerks

and other persons, other than appraisers, required to assist any register of wills in any county of this Commonwealth having a population of less than 1,500,000 in collecting and paying over inheritance taxes, shall be appointed and their compensation fixed by the Auditor General, and upon his approval and order shall be paid out of the said taxes in the hands of the register, together with other necessary expenses incident to the collection of such taxes."

The Auditor General recognized the necessity of appointing such a clerk in Crawford County to perform certain services for the State, and, pursuant to the provisions of said act, appointed Miss Malley as a clerk for the State during the term of office of Mrs. Hood's predecessor, and has continued such appointment to the present time.

In this capacity Mrs. Hood and Miss Malley have certified to the Auditor General that the performance of such services required 135 hours each month for one clerk. The State has paid for such services during all this time $47.25 per month. During Mr. Boswell's term of office this $47.25 was divided equally between him and the county; during Mrs. Hood's term this amount has been paid directly to Miss Malley and retained by her, in addition to the salary fixed by the salary board, which makes her salary for the present year $147.25 per month.

The Auditor General, in appointing Miss Malley a clerk for the purpose mentioned in the act and directing that she be paid out of State funds for 135 hours' service each month, recognized the fact that for this period of time Miss Malley is the servant of the State and not the servant of the county.

If Miss Malley would transfer this 135 hours' service from the State to the county, or a little more than two-thirds of her working hours, appellant would have the equivalent of the services of the extra clerk or deputy for two-thirds time, lacking from what she is asking only one-third of a deputy's full time.

Or if, on the other hand, the Auditor General would relieve Miss Malley from this clerkship to the State, which requires two-thirds of her time, by the appointment of any other special clerk, then Miss Malley would have full time for distinctly county services.

The office of Register of Wills and Recorder of Deeds for Crawford County pays a salary of $3500. In addition to this, the fees of the office paid by the State approximate a like amount annually. It reasonably follows that the fees received from the State should, at least in some measure, be applied to the payment of services distinctly rendered to the State and so recognized both by the State and as authorized by the recited statute.

It may be argued that appellant is as much entitled to an additional deputy as was her predecessor in office; that the request is not an innovation; that it is supported by example.

We can readily assent to each of these propositions, but this assent does not admit the correctness of the former conclusion which was suffered to exist without investigation or consideration.

It follows that the appeal should be dismissed at appellant's costs.

Now, May 8, 1925, the appeal is dismissed at appellant's costs.

From Otto Kohler, Meadville, Pa.